UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14100-CIV-MARTINEZ/MAYNARD

JONATHAN HUFF, as the Administrator of
the Estate of the Decedent, PAMELA M. HUFF,

 Plaintiff,

v.

UNITED STATES OF AMERICA,

 Defendant.
_____/

## OMNIBUS REPORT AND RECOMMENDATION

 **THIS CAUSE** is before me upon two pretrial motions that have been referred to me for appropriate disposition [DE 76; DE 77]. The first is Defendant's Motion to Enforce Magistrate Judge's Order and to Preclude Expert Testimony Regarding Causation ("Motion to Enforce") [DE 67], to which Plaintiff has responded in opposition [DE 68] and Defendant has replied [DE 72]. The second is Defendant's *Daubert* Motions to Limit or Exclude Expert Testimony ("*Daubert* Motion") [DE 71] to which Plaintiff has responded in opposition [DE 68] and Defendant has replied [DE 72]. I have reviewed the pertinent portions of the record and am otherwise duly advised. For the following reasons, I recommend that the Motion to Enforce be **DENIED** and that the *Daubert* Motion be **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

 This Federal Tort Claims Act ("FTCA") case stems from a vehicle collision that occurred on February 28, 2017 involving Pamela Huff and a U.S. government vehicle being driven by a Department of Agriculture employee [DE 27]. Ms. Huff passed away after this lawsuit was filed for reasons unrelated to the collision and her son/estate administrator, Jonathan Huff, has since

been substituted as Plaintiff [DE 25]. Plaintiff seeks damages for medical expenses, lost wages, and pain and suffering due to the injuries that Ms. Huff suffered as a result of the collision.

Plaintiff seeks to proffer the testimony of two experts, Dr. David Arango, an orthopedic surgeon, and Dr. Carl Lavin, a chiropractor – both of whom treated Ms. Huff. Plaintiff disclosed both experts as non-retained treating physicians and provided summaries of each doctor's expected testimony [DE 69-8].

On September 14, 2021, while discovery was ongoing, I issued the following Order on a dispute that had surfaced involving Plaintiff's treating physician disclosures:

> PAPERLESS ORDER granting in part 35 Defendant's Motion to Preclude Undisclosed Rule 26(a)(2)(B) Expert Testimony or, Alternatively, to Compel Disclosure. Plaintiff has disclosed summaries indicating that Plaintiff's treating physicians, Drs. Fiore, Arango, and Waldron, intend to opine on causation [35-1]. Importantly, however, "treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required." *Muñoz v. Dollar Tree Stores, Inc.*, 2021 WL 2012230, at *1 (S.D. Fla. May 20, 2021) (Martinez, J.). Such is the case here. Accordingly, to the extent Plaintiff intends for any of the identified treating physicians to opine on causation, Plaintiff shall provide a supplemental expert report that complies with Rule 26(a)(2)(B), including by explaining how and why each physician determined that Ms. Huff's injuries were caused by the underlying accident with appropriate specific citation to medical treatment records. *See id.* Such supplemental expert reports shall be provided by no later than September 28, 2021. Signed by U.S. Magistrate Judge Shaniek M. Maynard on 9/14/2021.

[DE 48]. It is undisputed that Plaintiff thereafter provided one supplemental report for orthopedic surgeon Dr. Arango.

In its Motion to Enforce, Defendant contends that Dr. Arango's supplemental report "falls hopelessly short of the [above] Order's requirements" because Dr. Arango did not author the report and because it contains opinions that were either not offered or contradicted by Dr. Arango himself at his deposition [DE 67 at 2]. Defendant asks the Court to "deem the report non-compliant" and

"preclude Plaintiff from offering testimony regarding causation" [*Id.*]. Plaintiff responds that Dr. Arango is a non-retained expert who treated Ms. Huff from March-August 2017. Following my above Order, Plaintiff's counsel states that he assisted in the preparation of a draft report that was presented to Dr. Arango for his final review, approval, and signature [DE 68 at 2]. Plaintiff contends that defense counsel did not object to Dr. Arango's supplemental report and was fully prepared for Dr. Arango's deposition taken on October 28, 2021 [*Id.*]. Plaintiff further contends that Dr. Arango was questioned at his deposition about his opinions and "[t]here was no discrepancy with regard to the doctor's opinion of *cause* of Pamela Huff's injuries being assigned to the automobile crash that she reported in her history." [*Id.*] (emphasis in original). Plaintiff adds that because this is a bench trial, the presiding District Judge is capable of discerning and ruling on issues of causation without the more stringent restrictions necessary for a jury trial [*Id.* at 3-4].

In its separate *Daubert* Motion, Defendant seeks to limit or exclude the testimony by Dr. Arango and Dr. Lavin that (1) Ms. Huff's upper back sprains/strains were "permanent within a medical degree of medical probability" and (2) that such injuries were caused by the collision at issue [DE 71 at 5-8]. Defendant seeks also to exclude Dr. Lavin's testimony related to Ms. Huff's cervical disc injuries [*Id.* at 8-9]. Alternatively, Defendant seeks to exclude Dr. Arango's testimony on the basis that he admittedly did not draft his own supplemental expert report [*Id.* at 9-10]. Plaintiff counters that Dr. Arango should be permitted to testify as to his opinion about causation, which he necessarily formed at the time he treated Ms. Huff and not in anticipation of litigation [DE 73 at 2]. While acknowledging that Plaintiff's counsel prepared a draft of Dr. Arango's report, Plaintiff contends that the report was approved by Dr. Arango and consisted of "information that was entirely Dr. Arango's work product." [*Id.* at 3]. Plaintiff adds that Defendant

has had a full opportunity to prepare for trial and to anticipate Dr. Arango's trial testimony, including by the taking of Dr. Arango's deposition [*Id*. at 3-4]. On the issue of permanency, Plaintiff points to excerpts from Dr. Arango's deposition testimony ascribing permanency to Ms. Huff's condition [DE 73 at 8-10].

## LEGAL STANDARDS

### 1.   *Expert Disclosure Rules for Treating Physicians*

Federal Rule of Civil Procedure 26 sets forth disclosure duties of parties relating to general discovery. Rule 26 differentiates between disclosures of witnesses who must provide a written report and those who do not need to provide full reports. *Muñoz v. Dollar Tree Stores, Inc.*, 2021 WL 2012230, at *1 (S.D. Fla. May 20, 2021) (comparing Rule 26(a)(2)(B) ("(2)(B)") with Rule 26(a)(2)(C) ("(2)(C)")).

Under (2)(B), a party seeking to introduce expert testimony from a retained expert must disclose a full written report containing a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming those opinions; any exhibits that will be used to summarize or support the opinions; the witness' qualifications, a list of cases where the witness testified as an expert during the previous 4 years; and a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B). In contrast, when an expert is not required to provide a written report, the attendant disclosure is "considerably less extensive" under (2)(C) and requires only disclosure of the subject matter on which the witness is expected to present evidence and a "summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); Fed. R. Civ. P. 26 Advisory Comm. Notes (2010 Amendments).

To qualify for the "less burdensome disclosure obligations" under (2)(C), a treating physician may offer only an opinion based on personal observations made while treating the party. *Pringle v. Johnson & Johnson*, 2019 WL 6723822, at *2 (S.D. Fla. 2019); *Wademan v. U.S.*, 2017 WL 7794322 (S.D. Fla. 2017). This testimony potentially may include opinions related to causation and prognosis, so long as those opinions stem from treatment of a party as a patient and involve observations the doctor made during the course of that treatment. *Jones v. Royal Caribbean Cruises, Ltd.*, 2013 WL 8695361, at *3 (S.D. Fla. 2013); *In re Denture Cream Products Liability Litig.*, 2012 WL 5199597, at *4 (S.D. Fla. 2012); *Sweat v. U.S.*, 2015 WL 8270434 (M.D. Fla. 2015) ("[I]f a treating physician formed the opinions that are the subject of the testimony directly through treatment of the plaintiff, the treating physician cannot be forced to file a written report required by Rule 26(a)(2)(B)").

Under Rule 26, a "treating physician may testify as either a lay witness or an expert witness; however, in order to testify an expert witness, the physician must provide the required disclosures under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C)." *Sweat*, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015). Rule 26's requirements are "not merely aspirational," rather, they are "designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Western Union Holdings, Inc. v. Eastern Union, Inc.*, 316 F. App'x 850, 854 (11th Cir. 2008).

If a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, *i.e.* the opinion is directed to matters that are not critical to the clinical decision-making process, then the treating physician's opinion is inadmissible unless the physician provides a written expert report in compliance with Rule 26(a)(2)(B). *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317-18 (11th Cir. 2011) (treating physician's testimony on identity of foreign

material removed from abdomen held inadmissible as lay opinion of treating physician in products liability case against manufacturer, since exact identity of substance was not critical to decision to remove it); *U.S. v. Henderson*, 409 F.3d 1293 (11th Cir. 2005) (treating physician's diagnosis of injury (fractured jaw) held permissible lay testimony, while statement about cause of injury (blow to side of face) was not essential to clinical decision-making and thus constituted impermissible lay opinion); *Maluff v. Sam's East, Inc.*, 2017 WL 5290879 (S.D. Fla. 2017); *Muzaffar v. Ross Dress for Less, Inc.*, 2013 WL 3850848, at *1 (S.D. Fla. July 26, 2013) (if a "treating physician or provider ventures beyond [observation, diagnosis, and treatment] and includes opinions on causation, prognosis, and/or future implications of the injury, then he or she must provide a full report satisfying the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)").

If a party fails to provide information as required by Rule 26(a), the party may not use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c). In determining if the failure to disclose was substantially justified or harmless, courts consider: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Managed Care Solutions, Inc. v. Essent Health Care, Inc.*, 2010 WL 1837724 (S.D. Fla. 2010).

    **2.**    **The *Daubert* Standard**

In federal court, expert opinions must meet the admissibility guidelines set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Before permitting expert opinion testimony, a court must make certain that the expert employs "in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Courts must act as gatekeeper to prevent speculative and unreliable expert testimony from reaching the jury. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (the "task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under *Daubert*"). This gatekeeping role is "significant" because an "expert's opinion 'can be both powerful and quite misleading.'" *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting Daubert, 509 U.S. at 595).

As gatekeeper, a court makes three inquiries: (1) first, if the expert is qualified to testify competently regarding the matters that he or she intends to address; (2) second, if the methodology by which the expert reaches his or her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) third, if the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998); *see also Cooper v. Marten Transp., Ltd.*, 539 F. App'x 963, 965–67 (11th Cir. 2013). The party offering the expert opinion testimony bears the burden to establish, by a preponderance

of the evidence, the expert's qualification, reliability, and helpfulness. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *Sumner v. Biomet, Inc.*, 434 F. App'x 834, 841 (11th Cir.2011); Frazier, 387 F.3d at 1260.

While admissibility rulings under *Daubert* inherently require the court to conduct an exacting analysis of the proffered expert's methodology, it is not the court's role to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The gatekeeper role is not intended to supplant the adversary system or the role of the jury. *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also U.S. v. Ala. Power Co.*, 730 F.3d 1278, 1282–85 (11th Cir. 2013) (the *Daubert* inquiry "is not intended to supplant" cross-examination and presentation of contrary evidence).

Importantly, in a bench trial situation, the court's gatekeeping function is more constrained. The court, sitting as trier of fact, is in the best position to distinguish between persuasive and shaky expert evidence at trial and it is thus accepted that the importance of the pretrial exclusion process contemplated by Daubert is lessened in that situation. *See, e.g., U.S. v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999) (the jury "would likely be even less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique"); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the

trier of fact in place of a jury."); *Ass Armor, LLC v. Under Armour, Inc.*, 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016) ("As this is a bench trial without a jury, however, the need for an advance ruling to exclude [expert's] testimony is superfluous and unnecessary.").

## **ANALYSIS**

Here, Plaintiff disclosed both Dr. Arango and Dr. Lavin as "[n]on-retained treating physicians pursuant to [Rule] 26(a)(2)(C) and [Rule 26(a)(2)(B)] as to cause" [DE 69-8] Defendant seeks an order excluding both doctors from offering their testimony and opinions regarding causation and permanency of Ms. Huff's sprains and strains.

As an initial matter, I note that Plaintiff's responsive briefing focuses exclusively on Dr. Arango and fails to address in any sort of meaningful way Defendant's motion to exclude the opinion testimony by treating chiropractor Dr. Lavin. Plaintiff has therefore failed to meet his burden to show that Dr. Lavin's opinions are admissible under *Daubert*. I thus recommend that Defendant's *Daubert* Motion be granted with respect to Dr. Lavin's opinion testimony related to Ms. Huff's cervical disc injuries, the permanency of her injuries, and causation. *See U.S. v. Gary*, 2010 WL 1375411, at *1 (S.D. Fla. Mar. 30, 2010) (excluding expert testimony "[s]ince there has not been a responsive pleading filed in opposition to the relief requested by the [*Daubert*] motion"); *Mark Principi v. Survivair, Inc.*, 2005 WL 5961991, at *5 (M.D. Fla. Oct. 18, 2005) (excluding expert opinion because "Defendant wholly fails to respond to Plaintiff's [Daubert] argument"). This testimony by Dr. Lavin should be excluded.

Turning next to Dr. Arango, Plaintiff appropriately disclosed his intent to rely upon Dr. Arango to testify "as to his examination, diagnosis and treatment of Pamela Huff and … that in his opinion there was a causal relationship between Pamela Huff's complaints and injuries and the

automobile crash in which Pamela Huff was involved in on February 28, 2017." [DE 69-8 at 1]. Plaintiff's disclosure provided a summary of facts and opinions to which Dr. Arango was expected to testify [*Id.* at 1-3]. By prior Order, I found that any treating physician—including Dr. Arango—expected to opine on causation must provide a supplemental expert report under (2)(B) that explains "how and why [any such] physician determined that Ms. Huff's injuries were caused by the underlying accident with appropriate specific citation to medical treatment records." [DE 48].

Dr. Arango's supplemental report provides additional details about his course of treating Ms. Huff, his opinions based on this treatment, and the basis for his opinions with reference to his own treatment encounters, his medical chart, and his review of pertinent records [DE 67-1]. Dr. Arango was deposed on October 28, 2021, at which time he testified about his course of treating Ms. Huff, his overall diagnosis of her condition, the nature and extent of her injuries, and his opinion that her condition "was caused by the motor vehicle accident." [DE 67-3 at 10-31].

Among other things, Dr. Arango testified that Ms. Huff never had any prior complaints before the collision,

> and now she has subjective complaints of cervical and lumbar spine pain across the shoulders, you know. Her reported history is that she was hit at 70 miles per hour.· That would cause a significant in layman's term, whiplash injury, you know, to the patient.· So her subjective complaints are consistent with the mechanism.· Her objective findings were also consistent with the examination and also consistent with the description of the mechanism of injury.· So in my opinion, when I saw her and evaluated her, I found everything to be consistent across the board.

[*Id.* at 22]. When asked if it was important to determine a cause of a patient's condition, Dr. Arango responded "Yes" because "first you have to have a mechanism of injury, right. You need to find out what happened … then you need to have the subjective complaints of where the pain is and then you need to have an objective examination that corroborates that … you have to put all

three together to come to a diagnosis." [*Id.* at 24-25]. Dr. Arango acknowledged that Plaintiff's attorney drafted the supplemental report, but confirmed that he reviewed it, agreed with it, and signed it [*Id.* at 39]. Dr. Arango confirmed his opinion "that the cervical sprains and strains that [he] identified were causally related to the motor vehicle accident on February 28" and explained his reasoning for reaching this opinion. [*Id.* at 56-64].

It is undisputed that Dr. Arango is a board-certified orthopedic surgeon who began treating Plaintiff the month after the collision at issue in this case. It is further undisputed that Dr. Arango is not a retained expert. Having reviewed Dr. Arango's supplemental report, I find that it sufficiently identifies the substance, content, and basis for his opinion on causation and therefore complies with my prior Order and (2)(B)'s requirements. I am unpersuaded by Defendant's arguments that Dr. Arango's testimony should be excluded because he did not draft his expert report. In stark contrast to the out-of-circuit cases relied upon by Defendant, *see* DE 71 at 9-10, Dr. Arango confirmed in his deposition that he independently reviewed the report, agreed with the report, and signed off on its contents. Dr. Arango's report states his opinion regarding causation and the basis and reasons for this opinion; the facts and information he considered; and an overview of the pertinent records he relies upon in support of his opinion—which includes his medical chart and his review of the diagnostic testing performed as part of his overall diagnosis and treatment.

In addition, I find that any deficiency in Dr. Arango's supplemental report is harmless. Dr. Arango was timely disclosed as one of Plaintiff's treating physicians during discovery and Defendant thus received timely notice of Dr. Arango's expected testimony. By virtue of my prior Order, Dr. Arango provided a later supplemental report with additional details about his opinions and reasoning, including with respect to the issue of causation. Defendant has deposed Dr. Arango

and has received Dr. Arango's medical records pertaining to his treatment of Ms. Huff. Thus, Defendant is on fair notice of Dr. Arango's scope of treating Ms. Huff, his overall diagnosis, and the reasoning behind his proffered opinion on causation. Dr. Arango's causation testimony is not only important to Plaintiff's claims in this case but it is also based on Dr. Arango's personal observations and matters central to his course of treating Ms. Huff. Under these circumstances, I find unavailing Defendant's attempt to outright preclude Dr. Arango from testifying.

Regarding Defendant's separate *Daubert* challenges, I find that Dr. Arango is qualified to opine on the issues of causation and the permanency of Ms. Huff's injuries. Experts may be qualified in various ways, including scientific training, education, or experience in a field. Indeed, "a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion under certain circumstances." *U.S. v. Goodman*, 699 F. App'x 860, 862 (11th Cir. 2017) (citing Fed. R. Evid. 702). Dr. Arango is a board-certified orthopedic surgeon who personally examined and treated Ms. Huff immediately following the collision at issue. Plaintiff provided a summary of the facts and opinions as to which this treating physician is expected to testify. Dr. Arango's later supplemental report makes clear that, in forming his opinions, he considered numerous resources including the results of diagnostic testing performed during his course of treating Plaintiff. Upon review of Plaintiff's summary, Dr. Arango's later supplemental report, and his deposition testimony, I find that his methodology is reliably sound and his opinion on whether Ms. Huff's injuries are consistent with the collision will help the trier of fact—in this bench trial situation, the presiding U.S. District Judge—understand the evidence and determine causation. *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (expert testimony is admissible if "(1) the expert is qualified to testify competently regarding the

matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."). Overall, I conclude that Dr. Arango is qualified to opine on Ms. Huff's injuries, including causation and the nature and extent of Ms. Huff's injuries.

Of course, Defendant will remain free to cross-examine Dr. Arango at trial concerning, among other things, any arguable discrepancies between his supplemental report and his deposition testimony. Defendant will also be free to raise appropriate objections to the precise scope of Dr. Arango's testimony during the bench trial, when a better evidentiary predicate for the presentation of his testimony is laid. As this is a bench trial without a jury, the presiding District Judge as the fact finder is "competent to disregard what he thinks he should not have heard, or to discount it for practical and sensible reasons," *Ass Armor,* 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016), and will be free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that:

1. Defendant's Motion to Enforce Magistrate Judge's Order and to Preclude Expert Testimony Regarding Causation [DE 67] be **DENIED**, and

2. Defendant's *Daubert* Motions to Limit or Exclude Expert Testimony ("*Daubert* Motion") [DE 71] be **GRANTED IN PART AND DENIED IN PART** as follows. The request to exclude chiropractor Dr. Lavin's testimony related to Ms. Huff's

cervical disc injuries, the permanency of her injuries, and causation should be granted. The remainder of this motion pertaining to orthopedic surgeon Dr. Arango should be denied.

## **NOTICE OF RIGHT TO OBJECT**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Jose E. Martinez. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 4th day of April, 2022.

_____
SHANIEK M. MAYNARD
U.S. MAGISTRATE JUDGE